WILLIAMS v. MONROE *et al., Appellants.*

Division Two, December 18, 1894.

1. **Supreme Court Practice:** FINDINGS OF TRIAL COURT. Findings of the trial court in actions at law will not be disturbed by the supreme court on the ground that they are contrary to the evidence, in the absence of a complete failure of evidence tending to support such findings.

2. **Municipal Corporation**: STREETS: CONDEMNATION PROCEEDING: JURISDICTION: PROCESS. Under the act of the general assembly, approved March 31, 1887 (Laws, 1887, p. 37), providing that the petition in condemnation proceedings for street purposes by a city "may be presented to the circuit court when in session, or to any judge thereof in vacation," and that upon filing the petition a summons shall be issued, the clerk is not authorized, on the filing of such petition, to issue a summons or order of publication.

3. **Jurisdiction**: SERVICE OF PROCESS: RECITALS. Although the record of a court of general jurisdiction recites that defendants have been duly served with process, it is competent to overthrow such recital by showing by other parts of the record, of equal dignity and importing equal verity, that such recital of service is not true.

4. **Condemnation Proceeding**: SERVICE OF PROCESS. When process does not issue from the court, judge or officer authorized by law to issue it, or to require its issuance, it is void.

5. ———: ———: OFFICER'S RETURN. A return of service which does not state that the officer found the person to be served, or failed to find her, or that he served her personally, is void on its face.

6. ———: ———: ———. Where the whole record of condemnation proceedings is before the court in a collateral action and it embraces a return of service, the court can not presume there is other evidence of service.

7. ———: COMMISSIONERS: NOTICE. The assessment of a property owner with benefits by the commissioners in condemnation proceedings by a city, under the act of the general assembly of March 31, 1887, without notice of the meeting of the commissioners for that purpose, is void.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

*Beardsley, Gregory & Flannell* for appellants.

(1) The objection that the circuit court did not acquire jurisdiction in the condemnation proceedings because the petition was filed in vacation and summons was issued without the petition having been first presented to the judge, is not well taken. There is no pro-

vision in the section applicable to the matter in hand to the effect that the petition before being filed should first be presented to the court for an order authorizing it to be filed and summons to issue thereon. (2) But if there were such provision, the omission would be such an informality as must have been taken advantage of at the hearing before the judge or by direct proceedings. *Leonard v. Sparks*, 117 Mo. 103. (3) The introduction of the sheriff's deed by the defendant, containing recital of judgment in the grading proceedings, was *prima facie* evidence of such judgment and of its regularity in all respects. The burden was then upon the plaintiff to show such judgment invalid. *McCormick v. Fitzmorris*, 39 Mo. 24; *Jordan v. Surghnor*, 107 Mo. 520. (4) The circuit court, by virtue of the act of 1887, and on filing of proper petition, had jurisdiction of the subject-matter. If it also had jurisdiction of the person of Mary E. Williams, then the judgment in that case is good against any collateral attack. This is clearly as true under the recent decisions of this court in proceedings of the sort in question, as it is in the case of all general judgments of the circuit court. *Leonard v. Sparks*, 117 Mo. 117. (5) Nor was service of notice of the time when the commissioners would appear on the premises to view the same necessary to give the court jurisdiction of the person for entering judgment. *Corns v. Apsen*, 12 Kan. 531; *Beebe v. Scheidt*, 13 Ohio St. 406; *Sedalia v. Railroad*, 17 Mo. App. 110; *Gray v. Bowles*, 74 Mo. 433. (6) Besides the commissioners in their report recite they served the notice as provided by the statute and it will not be presumed here that the single paper found among the files, and in no way referred to in the record, was the only proof before the court of the method of service of notice in this case.

*R. B. Middlebrook* and *W. A. Harnesberger* for respondent.

(1) Where the rulings of the trial court on the introduction of evidence are not made a ground of complaint in the motion for a new trial (as is the case in appellants' motion), they will not be reviewed in the appellate court. Hence, the appellants' objections to the introduction of evidence, and his exceptions to the court's rulings thereon, are of no avail, because he omitted them from his motion for a new trial. *St. Louis v. Brewing Co.*, 96 Mo. 677; *Giddings v. Ins. Co.*, 90 Mo. 272. (2) This, then, leaves only one ground of exception saved by appellants in their motion for new trial, *i. e.*, that the finding and judgment are against the evidence. The discretion of trial courts in their rulings on motions for new trials, based on this ground, will not be disturbed unless "there is a total and complete failure of testimony tending to support the issue." *McKay v. Underwood*, 47 Mo. 186; *Bank v. Armstrong*, 92 Mo. 280. (3) This being an action at law (in ejectment) and no declarations of law having been asked, given or refused at the instance of either party, and the court sitting as a jury by consent of parties, there is nothing for this court to review, as it is impossible to tell upon what theory the case was tried in the lower court, and the judgment will be affirmed if there is any evidence to support it. *Hamilton v. Boggess*, 63 Mo. 251; *Bray v. Kremp*, 113 Mo. 552; *Miller v. Breneke*, 83 Mo. 163; *Durell v. Masterson*, 50 Mo. 487; *Weilandy v. Lemuel*, 47 Mo. 322; *Easley v. Elliott*, 43 Mo. 289; *Wilson v. Railroad*, 46 Mo. 36; *Altum v. Arnold*, 27 Mo. 264; *Irwin v. Woodmansee*, 104 Mo. 407; *Hamilton v. Boggess*, 63 Mo. 233; *Gains v. Fender*, 82 Mo. 497; *Cunningham v. Snow*, 82

Mo. 587; *Mead v. Spaulding*, 94 Mo. 43; *Schultz v. Hickman*, 27 Mo. App. 25; *Garvison v. Lyle*, 38 Mo. App. 566; R. S. 1889, sec. 2135. (4) The commissioners in the condemnation proceeding (out of which sprang the sheriff's deed upon which defendants rely) failed to give personal notice to plaintiff or her agent of the time when they (the commissioners) would meet upon her premises. This kind of an omission is jurisdictional in its effect and justifies a collateral attack on the judgment. *Laney v. Garbee*, 105 Mo. 355; *Cloud v. Pierce City*, 86 Mo. 358; *Milner v. Shipley*, 94 Mo. 106; *Adams v. Cowles*, 95 Mo. 506; *Crow v. Meyersieck*, 88 Mo. 415; *McClanahan v. West*, 100 Mo. 321; *Blodgett v. Schaffer*, 94 Mo. 671; *State ex rel. v. Field*, 107 Mo. 445; *Kanne v. Railroad*, 33 Minn. 419. (5) The circuit court of Jackson county in the conduct of the condemnation proceeding was acting as a court of "special and limited" jurisdiction "and not as a superior court in the exercise of its common law powers, hence it will not do to call this omission to properly serve plaintiff with notice as 'an irregularity not affecting the jurisdiction.'" *Leslie v. St. Louis*, 47 Mo. 447; *Whiteley v. Platte County*, 73 Mo. 30; *Anderson v. Pemberton*, 89 Mo. 61; *Kanne v. Railroad*, 33 Minn. 419; *McCoy v. Zane*, 65 Mo. 11; *Railroad v. Campbell*, 62 Mo. 585; *Ellis v. Railroad*, 51 Mo. 200; *Gray v. Railroad*, 81 Mo. 126; *Jefferson County v. Cowan*, 54 Mo. 235. (6) The petition should not have been presented to the clerk in vacation. That officer had no right to issue writs until the petition had been presented to "the judge in vacation," who, if he considered the petition sufficient in form and substance, should have ordered summons to issue.

GANTT, P. J.—This is an action of ejectment in the statutory form, for the possession of lot 9, in

block one (1), of E. A. Phillip's subdivision of lots eleven (11), twelve (12) and thirteen (13) of D. O. Smart's subdivision, an addition to Kansas City, Jackson county, Missouri. Damages are laid at $80 and rents and profits $5 per month. The answer is a general denial. A jury was waived.

Plaintiff obtained judgment in the circuit court for possession of the lot, and damages in the sum of $40, and the rents were fixed at $5 per month. In due time defendants filed motions for new trial and in arrest of judgment.

The motion for new trial was based on the following grounds: "*First.* The finding of the court upon facts in this case is contrary to the evidence. *Second.* The finding of the court is contrary to law. *Third.* The finding of the court under the evidence should have been for these defendants. *Fourth.* The finding of the court under the law and upon the evidence should have been for these defendants." And the motion in arrest simply asserted that, upon the whole record, judgment should have been given for defendants, and the court erred in rendering judgment for plaintiff. No exceptions were saved to the ruling of the court on the admission of the evidence. No instructions were asked or given.

The only ground for reversal, as the record is now made up, is that the finding and judgment of the circuit court is against the evidence. It is the settled practice of this court not to disturb the findings of the circuit courts in actions at law on the ground that they are contrary to evidence, unless there is a complete failure of testimony tending to support the verdict or finding. *Wilson v. Albert*, 89 Mo. *loc. cit.* 544; *McKay v. Underwood*, 47 Mo. 186; *Bank v. Armstrong*, 92 Mo. 280; *Mead v. Spalding*, 94 Mo. 43. We may only look then to see if there was any testimony upon

which the court could rest a judgment for the plaintiff.

It was admitted she was the common source of title and entitled to recover unless certain condemnation proceedings instituted by the city in grading a part of Colorado avenue in said city had divested her title. Defendants relied on a sheriff's deed based on a judgment for benefits under these proceedings. We have had some difficulty in determining just how far we ought to consider the record of the condemnation proceedings. In the bill of exceptions we find this stipulation: "It is understood that all the records and papers in said case number 1674, as either party might desire to use, are in evidence." Now, with a perfect knowledge of the record, counsel on both sides have argued the sufficiency of the notice to Mrs. Williams. Her counsel, in his additional abstract and brief, makes the statement that the service was an order of publication. On the other hand, counsel for defendant argues the sufficiency of the service as giving the court jurisdiction and that when it was once obtained it was not open to collateral attack. We find, however, in the bill this fact, that the circuit court was not in session when this petition for the grading proceedings was filed with the clerk, nor was it presented to any judge of that court in vacation, and this is a sufficient basis for the discussion maintained on both sides as to the sufficiency or insufficiency of the service in the inception of these proceedings.

These proceedings were had under an act of the legislature approved March 31, 1887, entitled "Cities, Towns and Villages. Damages to Private Property for Public Use." Laws of Missouri, 1887, p. 37. The act provides that "*the petition may be presented to the circuit court when in session, or to any judge thereof in vacation.*" It further provides that "upon filing the petition a summons shall be issued, giving the defend-

ants *at least ten days' notice* of the time when said petition will be heard, which summons shall be served in the same manner as writs of summons are or may be by law required to be served." It is further provided that if the name or residence of the defendants, or any of them, be unknown, or if they, or any of them, do not reside within the state, they may be served by publication four weeks before the day of hearing the petition. It is further provided that the commissioners appointed by the judge or court "shall meet upon the premises at a time by them to be appointed, of which they shall give personal notice to the owners, or their agents, of the land affected, if they can be found, as well as five days' notice by advertisement in the newspaper doing the city printing." The construction of this statute must determine the validity of these proceedings.

I. The wisdom of the common law rule that no man shall have his rights judicially ascertained without notice is nowhere more apparent than in proceedings to condemn private property for public use. The legislation of this state, looking to the exercise of eminent domain, has uniformly required personal service if it could be had. It is generally conceded that the legislature may prescribe the character of the notice and a substantial compliance with the statute must be observed. A reading of this statute will, we think, demonstrate that the proceedings under it must be begun by presenting the petition to the court, *if in session,* and if the court is not in session, to a judge thereof in vacation. There is no other alternative in the statute. The petition can not be presented to any other officer. The proceeding is, and is intended to be, summary to a large extent. The forms and methods of procedure in other actions afford but little aid.

The legislature has adopted a procedure peculiar to this class of cases.

The defendant construes the statute as permitting the city to commence the proceeding as it would any ordinary civil action by filing the petition with the clerk and the issue of an ordinary summons, save that it only requires ten days' notice, instead of the fifteen in other civil cases. But it seems apparent to us that the legislature, for its own reasons, intended that these proceedings affecting so vitally the rights of private property should commence with an order from the judge of the circuit court. It will be noted that it is the judge or the court who is to appoint the commissioners, and in this connection that the summons issued shall give the defendant landowners at least ten days' notice. The length of the notice, then, is discretionary. In whom is it vested? We think most clearly, not in the clerk, but in the court or judge to whom the petition is presented. He must determine whether the petition is sufficient. He knows best *when and where* he can hear the proof of service and appoint the commissioners, and is best able to judge of the exigency. Unless the judge or court was to pass on the petition and fix the time and place for the hearing and specify the length of notice, the requirement that it should be presented to the court or judge would be entirely meaningless. Who but the judge himself could determine in vacation where and when he would hear the proof of service? Who in term time could so appropriately fix the time with reference to the business of the court, as the judge? Had it been the intention to institute these proceedings before the clerk, how simple it would have been to have authorized the filing of the petition with the clerk and authorized him to set the time.

But not only is this statute capable of no other

reasonable construction on its face, but this view is strengthened by other statutes *in pari materia.* Thus, in proceedings to condemn lands and water by corporations to supply cities with water, section 2796 provides "upon the presenting of the petition mentioned in the foregoing section to the circuit judge, *he shall order the petition filed and a* summons to issue, giving such owners at least ten days' notice of the time when said petition will be heard." And in the article providing for the appropriation of lands for telegraph, telephone, gravel, plank and railroads, sections 2734, 2735 and 2736, the presentation to the court or judge *precedes* the filing of the petition with the clerk. Moreover, when the statute imposes an independent duty on the clerk, it uses no uncertain language. Thus, when the commissioners' report is filed, section 2738 requires the clerk to notify the several owners.

So that we think that the statute meant that these important proceedings shall commence with the judge or the court, and he should fix the time for hearing the proof of service and appointment of commissioners and order the petition filed and the summons or publication to issue, and, therefore, this proceeding begun before the clerk was without sanction of law, and his summons or order of publication would alike be utterly futile and would confer no jurisdiction on the judge or court to proceed to condemn private property.

The learned counsel for defendant argues that the first time the services or discretion of the judge or court is to be invoked is *after the summons* or order of publication has been served on the day fixed by the clerk for hearing the proof and appointing commissioners. We can not assent to this construction of the statute so contradictory of its structure and the ordinary construction given similar statutes and provisions in the ordinary practice.

What, then, is the result? We all agree that condemnation proceedings under these statutes are judicial, and that, when once the court has acquired jurisdiction over the persons and subject-matter, the judgment, if within the power of the court, is not open to collateral attack. *Union Depot Co. v. Frederick,* 117 Mo. 138; *Leonard v. Sparks,* 117 Mo. 103.

But this doctrine, when rightly understood, does not in the least shake the authority of those decisions in this state which hold that, although the record of a court of general jurisdiction recites that defendants have been duly served with process, it is competent to overthrow such recital by showing by other portions of the record of equal dignity, and importing equal verity, that such recital of service is not true. *Cloud v. Pierce City,* 86 Mo. 357; *Laney v. Garbee,* 105 Mo. 355; *Milner v. Shipley,* 94 Mo. 106; *Bell v. Brinkmann,* 123 Mo. 270; 1 Freeman on Judgments [4 Ed.], sec. 125; *Higgins v. Beckwith,* 102 Mo. 456.

It requires no authority to establish the proposition that courts, even of general jurisdiction, can only acquire jurisdiction over parties, defendants, by an observance of the modes of procedure prescribed by law, unless the parties waive service, and enter their voluntary appearance. In the additional abstract of evidence filed by respondent, and not denied by appellant, "it appears that plaintiff was notified by publication of the time when the petition would be heard, and had received no personal notice of any sort at any time." So that there is no question as to the effect of any appearance by herself or her attorneys. It appearing, then, that whatever process issued in this case was the act of the clerk in vacation prior to and in fact without the petition having ever been presented to the court, could it confer jurisdiction over the plain-

tiff and estop her from questioning it in a collateral proceeding, when these facts appeared of record?

In *Laney v. Garbee*, 105 Mo. 355, we held that where the sheriff's return showed service only "by delivering a certified copy of this writ and the petition to a member of John Laney's family over the age of fifteen years," the judgment was void, the statute requiring a copy of the petition and writ to be left "at the usual place of abode" of the defendant "with some person of his family over the age of fifteen years." Citing *Bank v. Suman*, 79 Mo. 530; *Brown v. Langlois*, 70 Mo. 226; *Blodgett v. Schaffer*, 94 Mo. 669.

If the failure of the executive officer to comply substantially with the mode prescribed for service of the writ, regular on its face, renders the service void where it is constructive, how can a service be held sufficient when the process or writ does not even emanate from the only authority clothed with power to set it in motion? In other words not only must process be served in the manner prescribed by law. but the process itself must be the mandate of a court, judge or officer authorized by law to issue or require it to be issued. The stream can not rise higher than its source.

The summons or order of publication in this case, and it matters not which it was, was issued by the clerk without authority and could not become the basis of a valid judgment against the plaintiff in the absence of her voluntary appearance which it is conceded she did not enter. We readily concede that if the clerk has authority to issue a writ and omits some formal requirement it is not void; or if, as in *Leonard v. Sparks, supra*, the writ had been issued by one having authority to issue it and it had been regular in every respect and yet the defendant had not received the full notice required by law, it would not be void, in a collateral

proceeding; but we are not dealing with a defective execution of a lawful authority, but with a proceeding unauthorized by law, the exercise by a clerk of the powers conferred only upon the circuit court while in session, or a judge thereof in vacation. In *Schell v. Leland*, 45 Mo. 289, the action of the clerk in issuing an order of publication on a *non est* return, in vacation, was held absolutely void and conferred no jurisdiction on the court.

II. But it is also contended by plaintiff that the proceedings are void because the commissioners gave her no notice of their meeting on her lot to assess the benefits against her. The commissioners return that they gave personal notice to the several owners as well as five days' notice by advertisement, but they filed with their report the notice and service by the officer whose return is in these words: "I hereby certify that I have served the notice hereto attached upon the persons therein named within the limits of the city of Kansas, Missouri, as follows: On April 16, 1889, by delivering a copy of the said notice personally to each of the following named persons, Frank N. Chick * * * and I do further certify that I have made diligent search for the following named parties and their agents, to wit: Mary E. Williams, wife of J. R. Williams, within the limits of the city of Kansas, Missouri, either by delivering a copy of said notice personally to, or by leaving a copy of said notice at the usual place of abode of each of said parties respectively with a member of their respective families over the age of fifteen years.

"Witness my hand this sixteenth day of April, 1889.

"[Signed]          JOSEPH GLYN,
                    "Police officer."

"Subscribed and sworn to before Samuel S. Winn, Notary Public."

. This service is void on its face.   He neither states that he found plaintiff, or failed to find her, or that he served her with personal notice of the time when the commissioners would meet.

Plaintiff did·not appear and knew nothing of the meeting.   The commissioners assessed her benefits at $2.   By what system of nice discrimination they reached this verdict, the report does not disclose, but for this benefit of $2 property of the value of $1,500 was sold, without notice to her.   How the officer managed to avoid finding plaintiff's agent also excites one's curiosity. · Her tenant, Margery Monroe, was in actual possession up to January 1, 1890, and either plaintiff or her son was regularly collecting the rent in person. The slightest inquiry of this tenant would have disclosed plaintiff's whereabouts.

But it is said, first, that the return is no part of the record, and, if it was, it can not be presumed it was the only evidence.   We think the return was a part of the report and the whole record being before the circuit court there is no room for presumptions in favor of other evidence of service.

The serious question with us is whether the failure to give this notice is jurisdictional.   When it is considered that this is the only opportunity the owner has of proving his damages or disproving the supposed benefits, it is apparent that it is of vital importance to him or her to be present at the meeting of the commissioners.   It was held in *Kanne v. Railroad,* 33 Minn. 419, under a statute requiring the commissioners to give notice to the owner of the meeting to appraise the damages, *that the want of notice of the meeting of the commissioners went not to the jurisdiction of the court over the person of the landowner,* but to the authority of the commissioners to act.   The notice had respect to the compensation of the landowner, and the object

of it was to give him an opportunity to be heard on that question. Without it, the commissioners had no authority to make an assessment of his compensation or damages.

That the statute of 1887 requires two notices to the owner of land to be affected by grading proceedings is very plain. The meeting of the commissioners in this case to assess these benefits was the only one that really affected plaintiff. Have the courts the power to hold this plain statutory provision is of secondary importance? In *Leavitt v. Eastman*, 77 Maine, 117, the supreme court of Maine well expresses the doctrine. "It is common learning that where private property is sought to be taken against the will of the owner, under statute authority, *all* the statute requirements must be fully and strictly complied with. In the procedure no step, however unimportant, seemingly, must be omitted, nor will the substitution of other steps, in the place of those named in the statute, be sufficient. To deprive the citizen of his property requires the whole statute, and nothing in the place of the statute. If there be any degrees in the importance of the requirements, that of notice of the intended proceedings, would be the chief." *Harris v. Marblehead*, 10 Gray, 40; *Railroad v. Fitchburg*, 121 Mass. 132; *People ex rel. v. Kniskern*, 54 N. Y. 52; *Skinner v. Lake View Ave. Co.*, 57 Ill. 151.

Our conclusion is that in the absence of the notice required by the statute the award of the commissioners was void as to plaintiff. They had no authority to act. In the language of the supreme court of the United States in *Windsor v. McVeigh*, 93 U. S. 274, "the doctrine invoked by counsel that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, can not be collaterally assailed, is undoubtedly correct as a general proposition, but, like

all general propositions, is subject to many qualifications in its application." After enumerating many cases in which judgments would be void, the court says: "The doctrine stated by counsel is only correct when the court proceeds, after acquiring jurisdiction. of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it. The statement of the doctrine by Mr. Justice SWAYNE, in the case of *Cornell [Cornett] v. Williams*, reported in the 20th of Wallace, is more accurate. 'The jurisdiction,' says the justice, 'having attached in the case, everything done *within the power of that jurisdiction*, when collaterally questioned, is held conclusive of the rights of the parties, unless impeached for fraud.' 20 Wall. 250."

Having reached the conclusion that the proceedings of condemnation were as to Mrs. Williams void *in limine* because not presented to the judge or court, and that the action of the commissioners in assessing her with benefits without notice was void as to her for want of power in them to act without notice to her, we reach the result that there was ample evidence upon which to base the judgment of the circuit court, and its judgment is, therefore, affirmed. All of this division concur.